FILED
FEB 1 1 2010
~~~~~ CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | \* | CR. 09-40117 |
| Plaintiff, | \* | |
| vs. | \* | REPORT and RECOMMENDATION |
| CARLOS RAMOS-ROGEL, a/k/a "Charlie," | \* | (Motion to Suppress Statements, Docs. 24 Motion to Suppress Evidence, Doc. 26) |
| Defendant. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Pending are Defendant's Motion to Suppress Statements (Doc.24) and Motion to Suppress Evidence (Doc. 26). A hearing was held on Tuesday, February 2, 2010. Defendant was personally present and represented by his counsel of record, Assistant Federal Public Defender William Delaney. The Government was represented by Assistant United States Attorney John Haak. United States Drug Enforcement Agency Special Agent Gary Harvison testified at the hearing.[1] One Exhibit was received into evidence. Additionally, both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on a careful consideration of all of the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Suppress Statements (Doc. 24) be **GRANTED** in part and **DENIED** in part and that Defendant's Motion to Suppress Evidence (Doc. 26) be **DENIED**.

## JURISDICTION

Defendant is charged in an Indictment with Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 841(a)(1). The pending Motion to Suppress was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Schreier's Standing Order dated October 29, 2009.

---

[1] A transcript of the hearing has been filed as Doc. 34.

## FACTUAL BACKGROUND

On Friday, October 2, 2009, a concerned citizen contacted the Sioux Falls Drug Task Force indicating an individual ("the subject") was attempting to sell him/her methamphetamine. TR 9-10. The subject of the concerned citizen's calls was arrested that afternoon. TR 10. Law enforcement officials seized methamphetamine from the subject. *Id.* The subject decided to cooperate with law enforcement. *Id.*[2] The subject indicated his/her source of methamphetamine was "Charlie," and provided "Charlie's" phone number. *Id.*[3] The subject was held in jail over the weekend. *Id.*

The following Monday law enforcement met with the subject at the Police Department. TR 42. The subject agreed to make recorded phone calls to "Charlie" to inquire if "Charlie" would deliver additional quantities of methamphetamine. TR 10, 26, 27-28. Agent Harvison was present when the subject made the first few calls. TR 21. The subject indicated "Charlie" agreed to deliver an ounce of methamphetamine.[4] The subject asked "Charlie" for two ounces; "Charlie" agreed. TR 28-29. After the first few calls, Harvison left to travel to the designated place where "Charlie" agreed to deliver the methamphetamine. TR 43. After he left the presence of the subject, Harvison received information about the ongoing phone calls from Agent Stephan and Detective Schmitz, who remained with the subject while the remaining calls were made. TR 31-32, 35. The subject spoke during the recorded calls to "Charlie" in Spanish and "Charlie" responded in Spanish. TR 22-23. At the conclusion of each call, the subject would translate the "meat and potatoes" of the call to the agents in English. TR 23, 43-44.

---

[2] The subject was, at the time, on parole for underlying state criminal charges. TR 40. According to Agent Harvison, "he was caught, he was arrested, he knew he was in trouble," when he decided to cooperate. TR 41.

[3] Agent Harvison explained he did not personally speak with the subject on Friday, October 2. Harvison's partner, DEA Agent Hummel, and DCI Agent Stephan interviewed the subject on October 2 and relayed the information to Harvison. TR 11. Harvison also explained that all the information contained in the fact section of EX 1 (pp. 1-3) was information he knew or had been provided to him by other law enforcement officers. TR 20.

[4] Harvison acknowledged that during the phone calls the subject and "Charlie" did not use the words methamphetamine or ounces. TR 44.

2

Arrangements were made for "Charlie" to meet the subject at the Frying Pan restaurant on East 10th Street in Sioux Falls. TR 30. When Harvison arrived at the Frying Pan, three unmarked law enforcement vehicles were present, along with two Sioux Falls Police patrol cars which were parked close by for assistance. TR 33-34. After some confusion on his part about the exact location of the Frying Pan, "Charlie" arrived at approximately noon. TR 30-31. The agents had instructed the subject to ask "Charlie" what type of car he would be driving so the agents could identify him as he arrived at the restaurant. TR 31. "Charlie" indicated to the subject during one of the phone calls that he'd be driving a cream or tan colored car. *Id.* Agent Stephan called Harvison to advise "Charlie" would be approaching from the east in a cream colored vehicle. TR 36. Shortly thereafter, Harvison observed a cream colored Honda enter the Frying Pan parking lot from the east. *Id.* It was the only vehicle entering either of the Frying Pan's two entrances at that moment, and it was the only cream colored vehicle that arrived. TR 37. At the same time a call came over the police radio that a cream colored vehicle had entered the lot driven by a lone Hispanic male who was talking on a cell phone. *Id.* At the same moment, Agent Stephan radioed to Harvison that "Charlie" was on the phone indicating "I'm here at the restaurant." TR 37.

Harvison notified the uniformed officers to approach. By the time the uniformed officers arrived in the parking lot, "Charlie" had exited the vehicle and moved toward the trunk. The uniformed officers detained "Charlie." The officers asked Harvison whether there was "PC" (probable cause) for the car, and Harvison answered affirmatively. TR 38. Charlie was identified as the Defendant, Carlos Ramos-Rogel. TR 39. He was placed into custody and was not free to leave. TR 48. Sioux Falls Police detectives conducted a search of the Defendant's vehicle and found methamphetamine. TR 48-49. They did not obtain consent. TR 49. The methamphetamine was not in plain sight. *Id.* The Defendant was not within arm's length of the vehicle when it was searched. *Id.* Harvison does not speak "a lick" of Spanish. TR 42. Neither he, nor to his knowledge, any of the other officers communicated with the Defendant at the scene. TR 50.

The Government attached a copy of the transcript of the pertinent portion of the Defendant's translated interview which occurred at the Sioux Falls Police Department to its Amended Brief in

3

Response to Motion to Suppress Statements (Doc. 30). It is apparent that Mr. Ramos-Rogel was informed about some, but not all of his constitutional rights. Specifically, although he was informed of his right to counsel, he was not informed of his right to court-appointed counsel. *Id.* In its opening statement, the Government acknowledged this is a fatal flaw in the *Miranda* advisement which precludes the use of Defendant's October 5 statements in the Government's case-in-chief. TR 6. Although the Defendant prevails on his claim that the *Miranda* warning is fatally defective, he does not assert his statement was involuntary or coerced. TR 7.

## DISCUSSION

### Burden of Proof

As a general rule, the burden of proof is on the defendant who seeks to suppress evidence, *United States v. Phillips*, 540 F.2d 319 (8th Cir.1976), but on the government to justify a warrantless search or seizure. *United States v. Bruton*, 647 F.2d 818 (8th Cir.1981). The standard of proof is a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

### 1. Motion to Suppress Statements (Doc. 24)

As explained above, the Government concedes the *Miranda* warning administered to the Defendant was fatally flawed. There is nothing which appears from the partial transcript of his statement, however, which indicates it was given involuntarily or as the result of coercion. Likewise, the Defendant concedes he has not asserted he was coerced or that his statement was given involuntarily. "A statement by a defendant in circumstances violating the strictures of *Miranda v. Arizona* is admissible for impeachment purposes if the statement was made voluntarily. The trial court's finding that a statement was voluntary must appear from the record with unmistakable clarity." *Meis v. Wyoming Dept. of Corrections*, 9 F.3d 695, 697 (8th Cir. 1993)(citations omitted). The Ninth Circuit has explained, "[a]lthough a statement, taken in violation of *Miranda*, may not be used substantively in the prosecution's case-in-chief, such a statement, if voluntary, may be used for impeachment should the Defendant testify inconsistently. . . . However, if the statement was procured such that it was involuntary, then the statement is excluded for all purposes." *Pollard v.*

*Galaza*, 290 F.3d 1030, 1033 (9th Cir. 2002)(citations omitted). *See also, Oregon v. Hass*, 420 U.S. 714, 722-23, 95 S.Ct. 1215, 1221, 43 L.Ed.2d 570 (1975) (statement given after *Miranda* advisement and suspect had requested an attorney was not admissible in case-in-chief, but was admissible as impeachment evidence, because there was no suggestion the statement was involuntary or coerced).

Because the Government concedes the Defendant gave the statements after a flawed *Miranda* advisement, but the Defendant does not claim the statement was coerced or involuntary and no coercion or improper police conduct appears on the record, it is respectfully recommended that the Defendant's Motion to Suppress be **GRANTED** as to the use of his statements in the Government's case-in-chief. Because the Defendant's statements were voluntary, however, the Government may use them for impeachment purposes at trial. It is respectfully recommended that Defendant's Motion be **DENIED** as to use of the statements for impeachment purposes.

2.  **Motion to Suppress Evidence (Doc. 26)**

Defendant moves to suppress the evidence seized from his vehicle on October 5, 2009, on the grounds that "such evidence was seized without a warrant, without the consent of the Defendant, and . . . no exception to the search warrant requirement applied, all in violation of the Defendant's rights secured in violation of the Defendant's rights secured to him by the Fourth Amendment of the Constitution of the United States." *See* Doc. 26. The Government asserts the law enforcement agents had probable cause to search the Defendant's automobile on October 5, 2009, and that the automobile exception to the warrant requirement applies. *See* Doc. 28.

"Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 129 S.Ct. 1710, 1717, 552 U.S. ___, 173 L.Ed.2d 485 (citations omitted). "The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption . . that the exigencies of the situation made that course imperative." *Coolidge v. New Hampshire*, 403 U.S. 443, 455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (citations omitted). One of the exceptions to the warrant requirement is the automobile

exception, which allows officers to search a vehicle "if they have probable cause to believe the vehicle contains evidence of criminal activity." *United States v. Davis*, 569 F.3d 813, 816 (8th Cir. 2009). Another exception is the search incident to a lawful arrest. *Arizona v. Gant*, 129 S.Ct. 1710, 1717, 552 U.S. ___, 173 L.Ed.2d 485.

The Defendant relies upon *Gant* to assert that the automobile exception is inapplicable in this case. *See* Defendant's Brief, Doc. 27, p.2, and TR 54. *Gant*, however, addresses the proper scope of a vehicle search incident to arrest, not the automobile exception *per se*.

> The *Gant* decision confined the applicability of the search-incident-to-arrest exception to two situations. First, police may search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search. The within reach requirement places the search-incident-to-arrest exception within the boundaries set by the two underlying rationales for the rule set forth in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)-ensuring officer safety and protecting perishable evidence. In addition to the within-reach requirement, *Gant* also provided that circumstances unique to the vehicle context justify a search incident to lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle. Thus, police may validly search an automobile incident to an arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search *or* it is reasonable to believe the vehicle contains evidence of the offense of arrest.

*Davis*, 569 F.3d at 816-17 (citations omitted, punctuation altered). The *Davis* decision, which was issued three months after *Gant*, also recognized the automobile exception remained a viable and separate exception to the warrant requirement after *Gant*. "Under the automobile exception, officers may search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." *Davis*, 569 F.3d at 818. "That rule, [as recited] in *Gant*, remains unchanged." *United States v. Stotler*, ___F.3d ___, 2010 WL 114928 (7th Cir. at *4). *See also United States v. Martinez-Cortes*, 566 F.3d 767, 771 fn. 3 (noting that, after *Gant*, probable cause to believe evidence of drug crimes would be found constitutes a basis *independent of a search incident to arrest* for a warrantless search of a vehicle) (emphasis added).

The determinative question, therefore, is whether the officers had probable cause to search Mr. Ramos-Rogel's vehicle for evidence of illegal drug activity on October 5, 2009. If they did, the

6

search was appropriate as incident to Mr. Ramos-Rogel's arrest according to *Gant* and pursuant to the automobile exception.

> Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place. Probable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely on the information within the knowledge of the officer on the scene if there is some degree of communication. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. When police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody.

*United States v. Wells*, 347 F.3d 280, 287-88 (8$^{th}$ Cir. 2003) (discussing warrantless search of defendant's vehicle pursuant to the automobile exception as distinguished from search incident to arrest)(citations omitted, punctuation altered). The totality of the circumstances in this case, based on the collective knowledge of the officers, consists of the following facts:

- a subject who was on parole for state charges was arrested and found to possess methamphetamine;
- the subject decided to cooperate with law enforcement;
- the subject indicated his source of methamphetamine was "Charlie";
- the subject made recorded calls to "Charlie" for the express purpose of arranging to purchase more methamphetamine;
- during the recorded calls both the subject and "Charlie" spoke in Spanish, but the subject immediately translated the gist of the conversations to law enforcement officers even though they were not officially transcribed into English until later;
- as a result of the subject's recorded calls, "Charlie" agreed to meet the subject in the Frying Pan parking lot to deliver two ounces of methamphetamine to the subject;
- "Charlie" indicated he would be driving a cream colored vehicle;
- law enforcement officers observed a cream colored vehicle, driven by a what appeared to be a Hispanic-appearing male talking on a cell phone drive into the Frying Pan parking lot at the exact moment "Charlie" was on his cell phone telling the subject "I'm here at the restaurant;"

Given these facts, the totality of the circumstances would lead a reasonable person to believe there was a fair probability that contraband or evidence of a crime would be found in the cream colored car from which "Charlie" (who was later identified as Carlos Ramos-Rogel), had just exited in the Frying Pan parking lot. Agent Harvison correctly surmised the law enforcement officers had "PC"

to search. The search was therefore appropriate incident to arrest under *Gant* and as a warrantless search pursuant to the automobile exception. It is therefore respectfully recommended to the District Court that Defendant's Motion to Suppress Evidence (Doc. 26) be DENIED.

## CONCLUSION

For the reasons more fully explained above, it is respectfully recommended to the District Court that Defendant's Motion to Suppress Statements (Doc. 24) be **GRANTED** in part and **DENIED** in part as follows: Defendant's October 5, 2009 statements are inadmissible in the Government's case-in-chief but are admissible for impeachment purposes. It is respectfully recommended that Defendant's Motion to Suppress Evidence (Doc. 26) be **DENIED**.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

*Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990)
*Nash v. Black*, 781 F.2d 665 (8th Cir. 1986).

Dated this 11 day of February, 2010.

BY THE COURT:

John E. Simko
United States Magistrate Judge

ATTEST:
JOSEPH HAAS, Clerk
By _____, Deputy
(SEAL)

8