UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 09-40117-01-KES |
| | ) | |
| Plaintiff, | ) | ORDER DENYING |
| | ) | DEFENDANT'S MOTION TO |
| vs. | ) | SUPPRESS EVIDENCE AND |
| | ) | GRANTING IN PART AND |
| CARLOS RAMOS-ROGEL, | ) | DENYING IN PART |
| a/k/a "Charlie," | ) | DEFENDANT'S MOTION TO |
| | ) | SUPPRESS STATEMENTS |
| Defendant. | ) | |

Defendant, Carlos Ramos-Rogel, is charged with possession with intent to distribute a controlled substance. Defendant moves to suppress the evidence that was seized as a result of a warrantless search of his automobile and his statements, which were made to police officers after his arrest. The government resists those motions. On February 11, 2010, Magistrate Judge Simko issued a report and recommendation recommending denial of defendant's motion to exclude the physical evidence and granting in part and denying in part defendant's motion to exclude statements. Defendant objects to the recommendation as it pertains to the motion to suppress the physical evidence.[1] The government has not filed

---

[1] With regard to defendant's motion to exclude statements, the report recommends that defendant's statements be inadmissible for purposes of the government's case-in-chief because defendant was not properly advised of his rights as required under Miranda v. Arizona, 384 U.S. 436 (1966). The report also recommends that the court admit the statements for impeachment purposes if defendant decides to testify because the statements were voluntary.

any objections. After a de novo review, the court adopts Magistrate Judge Simko's report and recommendation as supplemented herein.

**STANDARD OF REVIEW**

Under 28 U.S.C. § 636(b)(1), "when a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, '[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.' " United States v. Lothridge, 324 F.3d 599, 600 (8th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)); see also Fed. R. Civ. P. 72(b) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

**FACTUAL BACKGROUND**

The facts leading up to the search are as follows:[2]

On Friday, October 2, 2009, a concerned citizen contacted the Sioux Falls Drug Task Force indicating that an individual was attempting to sell methamphetamine. (Docket 33-2, Tr. 9-10.) Later that afternoon, an officer

---

See Meis v. Wyoming Dept. of Corr., 9 F.3d 695, 697 (8th Cir. 1993) ("A statement by a defendant in circumstances violating the strictures of Miranda v. Arizona is admissible for impeachment purposes if the statement was made voluntarily." (citing Mincey v. Arizon, 437 U.S. 385, 397-98 (1978)). Defendant has not objected to this portion of the report and recommendation. (Docket 43, at 2 n.1.).

[2] Defendant does not dispute the facts as recited in the report and recommendation. Defendant does not, however, accept the legal conclusion found therein with regard to the evidence seized in defendant's vehicle.

arrested the individual alleged to have been selling methamphetamine and seized methamphetamine. (Tr. 10.) The individual (hereinafter "the informant") decided to cooperate with law enforcement and disclosed that the source of the informant's methamphetamine was "Charlie" and provided "Charlie's" phone number. (Tr. 10.) The informant was held in jail over the weekend. (Tr. 10.)

The following Monday, law enforcement met with the informant at the police department. (Tr. 42.) The informant agreed to make recorded phone calls to "Charlie" and inquire if "Charlie" would deliver additional quantities of methamphetamine. (Tr. 10, 26, 27-28.) The informant asked "Charlie" for two ounces of methamphetamine, and "Charlie" agreed.[3] (Tr. 28-29.) The informant spoke in Spanish during the recorded calls to "Charlie," and "Charlie" responded in Spanish. (Tr. 22-23.) After each call, the informant would translate the "meat and potatoes" of the call to the agents. (Tr. 23, 43-44.) Agent Harvison was present when the subject made the first few calls.[4] (Tr. 21.)

After the first few calls, Harvison left for the designated place where "Charlie" agreed to deliver the methamphetamine to the informant. (Tr. 43.)

---

[3] The government acknowledges that the informant and "Charlie" did not use the actual words "methamphetamine" or "ounces" during the phone calls. (Tr. 44.)

[4] Harvison does not speak Spanish. (Tr. 42.)

3

After Harvison left, he continued to receive information about ongoing phone calls between the informant and "Charlie" from Agent Stephan and Detective Schmitz, who remained with the informant while the calls were made. (Tr. 31-32, 35.) These phone calls also involved the informant and "Charlie" speaking in Spanish and the informant translating afterwards. (Tr. 23, 43-44.)

Arrangements were made for "Charlie" to meet the informant at the Frying Pan restaurant on East 10th Street in Sioux Falls. (Tr. 30.) For purposes of identifying "Charlie" when he arrived at the restaurant, the agents instructed the informant to ask "Charlie" what type of car he would be driving. (Tr. 31.) The informant said that "Charlie" said that he would be driving a cream or tan colored car. (Tr. 31.) Additionally, information that "Charlie" would enter the Frying Pan parking lot from the east was obtained by the informant. (Tr. 35-36.) Agent Stephan called Harvison to advise him that "Charlie" was east of their location in a cream colored vehicle. (Tr. 36.)

Shortly thereafter, Harvison observed a cream colored Honda enter the Frying Pan parking lot from the east, and a call came over the police radio that the cream colored vehicle that had entered the lot was being driven by a lone Hispanic male who was talking on a cell phone. (Tr. 36-37.) It was the only vehicle entering either of the Frying Pan's two entrances at that moment, and it was the only cream colored vehicle that arrived. (Tr. 37.) At the same moment that the cream colored car entered the parking

4

lot, Agent Stephan radioed to Harvison that "Charlie" had just told the informant, "I'm here at the restaurant." (Tr. 37.)

By the time the officers arrived in the parking lot, "Charlie" had exited the vehicle and moved toward the trunk. He was placed into custody and was not free to leave. (Tr. 48.) "Charlie" was identified as defendant, Carlos Ramos-Rogel. ( Tr. 39.)

The officers asked Harvison whether there was probable cause to search the car, and Harvison answered affirmatively. (Tr. 38.) Defendant did not consent to the search. (Tr. 49.) Police detectives searched defendant's vehicle and found methamphetamine. (Tr. 48-49.) The methamphetamine was not in plain sight. (Tr. 49.) Defendant was not within arm's length of the vehicle when it was searched. (Tr. 49.)

## DISCUSSION

Defendant argues that the warrantless search of his vehicle violated his Fourth Amendment right to be free from unreasonable searches and seizures. See U.S. Const. amend. IV. The government argues that the search falls within the automobile exception to the warrant requirement. See Carroll v. United States, 267 U.S. 132, 155 (1925) ("The measure of legality of such a [warrantless] seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported.").

"In the case of a warrantless search, the government bears the burden of establishing an exception to the warrant requirement." United States v. Kennedy, 427 F.3d 1136, 1140 (8th Cir. 2005) (citation omitted). "The so-called 'automobile exception' permits police to conduct a warrantless search of an automobile if, at the time of the search, they have probable cause to believe that the vehicle contains contraband or other evidence of a crime." Id. at 1140-41 (citing Carroll, 267 U.S. at 158-59) (other citations omitted). "Probable cause sufficient to justify a search exists where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Id. at 1141 (citing Illinois v. Gates, 462 U.S. 213, 238 (1983) (other citation omitted)). "In determining whether an officer had probable cause to search, courts apply a common sense approach and consider all relevant circumstances." Id. (citation omitted).

The information about "Charlie" was obtained from an informant who immediately translated his conversations with "Charlie" into English for the law enforcement officers. Because the informant was in police custody and cooperating, the officers were working with a "known informant" as opposed to an "unknown informant." See United States v. Nolen, 536 F.3d 834, 839-40 (8th Cir. 2008). "A known informant['s] [] reputation can be assessed[,]" and he "can be held responsible if [the] allegations turn out to be fabricated." Id. at 839-40 (internal quotations and citations omitted).

6

Conversely, "an anonymous informant . . . cannot so easily be held responsible." Id. at 840 (citation omitted).

The informant was "unproven," however, because there was no evidence of a "track record of supplying information to law enforcement officers." Id. "Information supplied by [an unproven informant] 'requires some independent verification to establish reliability.' " Id. (quoting United States v. Kent, 531 F.3d 642, 649 (8th Cir. 2008)). "Independent verification occurs when the information (or aspects of it) is corroborated by the independent observations of police officers." Id. (internal quotations and citation omitted).

Here, the police were told by the informant that "Charlie" agreed to meet the informant at the Frying Pan located on East 10th Street in Sioux Falls, South Dakota, for purposes of selling methamphetamine. The informant also told the police that "Charlie" would be driving in a cream or tan vehicle and that "Charlie" would be arriving to the Frying Pan from the east. While the police were waiting at the Frying Pan, they saw a cream colored vehicle pull into the parking lot from the east. The police also noticed that the driver of the vehicle was talking on a cell phone. At the exact moment that the cream colored vehicle was entering the parking lot from the east, the informant told the police that "Charlie" had just told him that he, "Charlie," had arrived at the Frying Pan.

7

The circumstances that led up to the search of the vehicle demonstrate that the police independently verified by their own observations the information provided by the informant.  See id. (noting that the unproven informant "provided a variety of specific, detailed information that was independently corroborated by officers and proved to be accurate").  The police had effectively confirmed that the driver of the vehicle in question was "Charlie."  Thus, having concluded that the driver of the vehicle was "Charlie," the police had probable cause to believe that "Charlie" was at the Frying Pan to sell methamphetamine to the informant.  See Illinois v. Gates, 462 U.S. 213, 245 n.13 (1983) ("In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts."); United States v. Wilson, 964 F.2d 807, 809 (8th Cir. 1992) ("[C]orroboration of minor, innocent details can suffice to establish probable cause.  The theory connecting reliability and corroboration is that an informant who is correct about some things more likely will be correct about critical unverified facts, and it is not necessary to a finding of reliability that the corroboration extend to illegal activity as well as to innocent details." (internal quotations and citations omitted)).

The purpose of the meeting at the Frying Pan was for "Charlie" to sell methamphetamine to the informant.  The police were working with a known informant.  And the information about "Charlie's" actions and identity was

8

sufficiently corroborated by the police. Therefore, under the totality of the circumstances, the police had probable cause to search the vehicle because there was "a fair probability that" methamphetamine would be found in "Charlie's" vehicle. Kennedy, 427 F.3d at 1141. Thus, the warrantless search of defendant's vehicle falls within the "automobile exception" to the warrant requirement.

Defendant argues that the Supreme Court's recent decision in Arizona v. Gant, 129 S. Ct. 1710 (2009), requires that the evidence be excluded. Gant involved a search incident to a lawful arrest of an individual for driving with a suspended license. See id. at 1715. The Supreme Court held that the warrantless search of the vehicle was unconstitutional because no occupants of the vehicle were "within reaching distance of the passenger compartment at the time of the search" and it was not "reasonable to believe the vehicle contain[ed] evidence of the offense of arrest." Id. at 1723.

First, Gant did not do away with the "automobile exception" to the warrant requirement. See id. at 1721 (recognizing that "[o]ther established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when . . . evidentiary concerns demand[,]" such as where "there is probable cause to believe a vehicle contains evidence of criminal activity" (citing United States v. Ross, 456 U.S. 798, 820-21 (1982)). See also United States v. Davis, 569 F.3d 813, 816-18 (8th Cir. 2009) (recognizing the "automobile exception" as distinct from the "search

9

incident to a lawful arrest" exception and analyzing a warrantless search of a vehicle in light of Gant); United States v. Alexander, 573 F.3d 465, 475 n.2 (7th Cir. 2009) ("We need not rely on the search incident to arrest exception, so [Gant] has no direct bearing on this case–except that we note that the Supreme Court continues to recognize the automobile exception to the warrant requirement." (citation omitted)). Accordingly, the warrantless search of the vehicle is upheld under the "automobile exception" to the warrant requirement as explained above.

Second, the "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' " Gant, 129 S. Ct. at 1719 (quoting Thornton v. United States, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment)). It was reasonable for the police to believe that methamphetamine, which was relevant to "Charlie's" arrest,[5] would be found in "Charlie's" vehicle as explained above. Therefore, Gant does not require that the evidence be excluded in this case. See Gant, 129 S. Ct. at 1723-24 ("Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." (emphasis

---

[5] Defendant has not challenged the lawfulness of his arrest.

added)).  Thus, defendant's reliance on <u>Gant</u> as supporting the suppression of the evidence found in the vehicle is without merit.

## CONCLUSION

Under the totality of the circumstances, there was probable cause for the officers to believe that methamphetamine would be found in "Charlie's" vehicle because the officers independently corroborated sufficient information provided by a known informant.

Accordingly, it is hereby

ORDERED that defendant's motion to suppress the evidence (Docket 26) is denied.

IT IS FURTHER ORDERED that defendant's motion to suppress the statements (Docket 24) is denied in part and granted in part as set out in Magistrate Judge Simko's report and recommendation (Docket 35).

Dated April 13, 2010.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE